GEORGE OVERMYER et al., Appellants, v. PERRY OVERMYER et al.,
Appellees.

**DEEDS:**  Validity—Mental Incompetency.  Evidence relative to the
mental competency of an aged and infirm grantor reviewed, and
held not to present such clear and satisfactory showing of incom-
petency as would justify the setting aside of the deed.

*Appeal from Guthrie District Court.*—H. S. DUGAN, Judge.

JUNE 25, 1921.

SUIT in equity to set aside a deed for want of mental
capacity in the grantor to make the same.  After a trial on the
merits, a decree was entered dismissing the petition of plain-
tiffs.  They appeal.—*Affirmed.*

*C. E. Berry, W. F. Moore,* and *W. D. Milligan,* for appel-
lants.

*A. M. Fagan* and *F. E. Gates,* for appellees.

EVANS, C. J.—The grantor in the deed assailed herein was
George Overmyer, Sr., who died in his ninetieth year, on April
4, 1918.  The deed in question was a conveyance of 40 acres of
land, and was executed in August, 1916.  He left surviving him
four daughters and three sons.  The sons are known in the record
as George, Ed, and John.  The grantees in the deed are Roy and
Perry Overmyer, the two sons of the son John.  They are the
defendants herein.  The plaintiffs are the son George and four
daughters of the deceased grantor.  The sole ground of attack
is mental incapacity.  There is no claim that the grantees were
instrumental in procuring the deed, nor any claim of undue in-
fluence by anyone, except such as inheres in mental incompetency.
The evidence on both sides on the question of mental incom-
petency is very contradictory and quite perplexing.  The gran-
tor, Overmyer, was twice married.  The wife of the first mar-
riage died in 1872.  The wife of the second marriage died in
1889.  The children were all born of the first marriage.  The

sons George and John had lived upon the farm with their father continuously until about the year 1890. At that time, John was married. He was then about 30 years of age. The father thereafter made his home with him upon the farm. They lived first upon the father's farm, which was later sold. Thereupon, they moved upon John's farm, where the father continued to make his home until August, 1915. Twelve or 14 years prior to that time, the father had bought a house at Casey, which became occupied by the son George as a home. Though his wife died in 1913, George was still occupying the home in April, 1915, when the father came to live with him. He continued to live with him until January, 1916, when George moved to another town. The father continued to live in this home until August, 1917. During a part of this time, one or two of the daughters, who lived in the town of Casey, gave him daily care. During the other part of the time, others were employed for that purpose. In August, 1917, he moved back to John's home, where he remained until his death. It was while he lived in his home at Casey that the deed under attack was made. The deed was not delivered in his lifetime to the grantees, but was delivered by the grantor to his attorney, who drew the same, with written direction to the attorney to deliver the same to the grantees after his death.

The last few years of the grantor's life were spent under considerable disability. He suffered from sciatica, which rendered one limb almost helpless; he had a partially paralyzed arm, which rendered it difficult, and finally impossible, for him to sign his name; his hearing was bad; his eyesight was poor; he had kidney and bladder and prostatic trouble; he was fretful and complaining and sometimes cried; he scolded those who helped him; he was rough in speech and profane; he was careless of his dress and person. All in all, he was an eccentric and difficult patient. His eccentricity, however, was not of recent origin.

The general scope of the evidence for the plaintiff is that the infirmities of old age were upon him to an extraordinary degree; that he was forgetful; that he asked the same questions repeatedly; that he often failed to recognize persons that he knew; that he "talked silly;" that his complaints were unreasonable, and therefore the probable result of delusion; that he threatened

dire punishments upon those that helped him. The evidence for defendant tended strongly to contradict or to explain most of the evidence thus adduced by plaintiffs. Bad eyesight and hearing could account for much repetition of questions and failure to recognize persons. The discomfort of his infirmities could account for much fretful complaint. The final illness began about one month prior to the death. The decedent had not, before that time, been confined to his bed. Up to his final illness, he did, in fact, transact all his own business, such as it was, though he did not actually sign his own checks after his arm had become helpless. Whatever was done for him in the way of business appears to have been done always under his direction. Taking the evidence as a whole, it is undoubtedly true that, at the time the deed was executed, the grantor was approaching the line of incompetency. We would hesitate to say, upon this record, that he had reached such line. It may be conceded that we would hesitate also to say affirmatively that he had not reached it. The burden of proof is on the plaintiffs. This burden calls for a clear and satisfactory showing, and not a doubtful or hesitant one. The evidence for the defendants as a whole has considerable corroboration in the family history. There is evidence, also, that the intent to make this conveyance had existed for many years in the mind of the grantor, and that it had been sometimes expressed. The grantor had some other property. He left a will. Its provisions do not appear in the record. Neither does it appear when such will was made.

We reach the conclusion that the proof offered on behalf of the plaintiffs is not, in the light of the whole record, of the satisfactory character which would justify the setting aside of this deed. The decree of the district court is, therefore,—*Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.